We'll move to the third case of the day, which is Helton v. Steak N Shake, 20-14-549. We have Mr. Little here for the appellant, Mr. Grotti. Thank you for that phonetic cue, Brian. So, Mr. Little, you may proceed when ready. If it pleases the Court, we raise two issues on appeal in this summary judgment case in a premises liability matter. We think that there's these two independent reasons why the lower court's decision should be reversed and the proceedings remanded, or the matter remanded for further proceedings. There's the primary issue, the easiest issue to resolve, is the relative knowledge of the parties. That is something that's been discussed in Georgia Supreme Court cases. It's very well established. So, of course, you're familiar with the briefs and the record. There's evidence that a jury could find that the defendant, the appellee, Steak N Shake, had actual knowledge of this water that caused the fall. An employee said, I saw a shiny, very shiny floor. I guess that means water. And she wasn't sure, but I think that's what you do on a summary judgment. You, the inferences are in favor of the non-movement. And so we're entitled to that inference that there was actual knowledge by the Steak N Shake restaurant. At best, there's constructive knowledge on the part of the plaintiff. Why is there, explain to me the constructive knowledge point, because I'll just admit to being confused by these Georgia cases. But in the way I think of constructive knowledge is it requires someone to sort of say, well, you know, the law imputes upon you some kind of knowledge or, you know, because you knew one fact, we're going to, we think you know the subsequent fact. Here there's a sign that says wet floor. How much more actual knowledge can you get? And there's a sign that says the floor is wet. And like I said, I confess to being confused by the cases. The sign imputes constructive knowledge of the hazard. Of course there's, what the court found was that she had equal knowledge of the hazard. But in fact, at the very best, she had equal knowledge that there was a sign. And I guess that's like, why is the sign constructive instead of actual? If there's a sign that says, you know, danger, rocks ahead, it doesn't seem to be constructive knowledge. If someone tries past that sign that there are rocks ahead, it seems that they would know that there are rocks ahead because there's a sign that says it. I mean, what am I missing? The cases do make a distinction as to whether there's testimony that the individual saw the sign or not. And, of course, that's the whole point of constructive knowledge. You should have seen the sign is what the court has said. Now, for the Allen v. ABM Aviation case, which both of us have cited, makes a distinction if you look at the, I think it's the very last footnote in the case, says, you know, it's an important distinction that the plaintiff says that she did not see or he or she did not see the sign. There's a difference between cases where the plaintiff does see the sign, admits it, says that's their testimony versus not. In, for example, the Dickerson case, which we cited, that's another case where the relative knowledge of the parties is important because you can have someone who sees some indication of a problem or generally prevailing hazardous conditions but doesn't have knowledge of the specific hazard. Can I ask you just a quick sort of mechanical question going back to Judge Brasher's question, I guess? Does that mean, in effect, that every one of these cases goes to a jury? I mean, if the plaintiff can always just say, didn't see it, didn't see it, didn't see it. I mean, how do these cases ever get resolved in summary judgment? Well, that's a good question. There's a couple of ways, I think, and I hope I don't forget as I'm answering one and forget the other one. But it happens a lot. So the first thing I would say to that is that we have sworn testimony from an employee saying that a jury could infer actual knowledge on the part of the defendant, the premises owner. And it's not always the case. Sometimes you have constructive and constructive knowledge. The defendant simply hadn't inspected the area for a long time, and so you infer constructive knowledge, and then there's a sign, and then they're equal knowledge. And so that justifies summary judgment in favor of the defendant. And your question was? I'm really curious, really, about the other side of the ledger, her knowledge. Okay. And I get it that there is this equation of constructive to constructive or actual to actual, but even in the circumstance where we think the evidence bears out that stake and shake or the premises owner had actual, if the plaintiff can always win by saying, well, I didn't have actual because I didn't say the sign, then I worry that we're going to trial in every single one of these cases. And that is built into the C change in premises liability launch order from the Robinson v. Kroger case in 1997 and then restated again in the AMC v. Brown case in 2009. And that is there is a right on the part of the invitee or the plaintiff in this case to rebut that allegation that she failed to exercise reasonable care for her own safety. And so it doesn't happen in every case. Sometimes there isn't a rebuttal to that allegation. And in this case, we have a number of rebuttals that we have raised that were not. The only issue that was discussed in the district court's order was her coming around this booth and kind of saying that that really wasn't an excuse. And so we have a number of excuses that we had raised why that would apply. And, for example, the ambiguous location of the sign. First of all, the sign at issue that's shown in the pertinent video of her fall was not placed relating to this particular hazard that ultimately caused her fall. It was placed over an hour prior by someone who was mopping in a different area. So the sign itself is not relating to this particular hazard. Second, we had dug into the policies and procedures of this particular establishment to determine that they have found that it's important to surround the hazard with signs. And you can imagine that if you have an area that's surrounded with signs, and you've probably seen those in places, that will discourage someone from walking through that area because they know that's a dangerous area. When you have one random sign or one sign on this side and one sign on this side, you don't know what is a safe area and what is a hazardous area. So there are ways to place a sign or multiple signs that can result in a grant of summary judgment for the premises owner. So, in essence, in order for a premises owner to protect itself against trial in every case, there's a rule, I guess, that you're proposing that we adopt, or maybe that you say that Georgia has adopted, that any area be surrounded by signs. That's this particular employer's policy. But that's not indicative of the legal duty required of other employers, right, necessarily? No, not necessarily. I mean, I think if you had an expert come in, an expert might testify and establish that factor across the industry as a safety procedure. Somehow, Steak and Shake came up with that rule for themselves. And I'm running out of time, but I'll just... You're good. You've got a couple of minutes. I'll still... So to answer your question, I think that it would not result in trial in every case because there's not this type of evidence in every case. We have evidence that they moved the sign, one of the signs further away from the hazard before the incident, and then moved it right back after the fall to indicate... That's a subsequent remedial measure of... That it should have been in a different location, perhaps. We have this policy that they need to clearly delineate the area of the hazard. And then, of course, we have the fact that of the two signs at issue that were on opposite sides of the dining room, neither one of them, even at the appellee's own admission, was placed for this accumulation of water, which we learned very late in discovery that may have come from this leaking soda fountain device in the center of the dining room. But in any case, these signs were not there for that and did not want anyone to avoid it. And then we have this video showing many, many people, employees and guests, several dozen, walking through this area, some of them closer to the sign than Ms. Helton was and not appearing to behave any differently. And so that's why we cited to the information about is the reasonable person standard of care and how Judge Posner mentioned it's kind of like the average person. You have all these people on the video and she didn't behave any differently than they did materially. So with that, I'll pass it on. Judge Branch, do you have any questions? Yes, I do. Thanks, Judge Newsom. I'm trying to sort of probe the limit of the situation we have here where there is a sign and when the sign is going to serve as actual notice to the person who slipped and when it's not. And so I'm trying to envision a situation where the person, the patron of the restaurant is distracted, maybe walking backwards to talk to somebody. The sign is very visible and the person slipped. Is that going to, when the person says, I just didn't see it because I was turned and walked backwards, is that going to prevent summary judgment because the person didn't see the sign that they should have seen if they were walking forward? I think walking backward is a little bit different because, well, I guess hypothetically it could, but my point would be that, you know, if you're walking backward, that's just not exercising care for your safety, but in the same way that walking forward would be and looking up toward the cash register or wherever she was looking. I will say that I think that the Allen v. ABM Aviation, not to cite it again, it was a, I believe it was a grant of, affirming the grant of summary judgment so I'm not to cite it too much, but they did note that in that case the person, the plaintiff in that case, observed not only one sign but also observed a person mopping. And so you can kind of put two and two together when you see those things. That's different from our case because she did not see anyone mopping. That's clearly established. I'm talking about a situation where the sign is up, nothing else. The sign is posted in the restaurant near where there's something spilled on the floor. It says wet floor. They've mopped, whatever. And the person is not paying attention. The person is looking up at the ceiling and continuing to walk and just doesn't see the sign. If the person says no matter what the circumstances, I didn't see it, does that mean he or she doesn't have actual knowledge even though the sign was visible to everyone but the person wasn't paying attention? Is that always constructive knowledge? And are we always going to head to trial? No, again, because I, even in that situation, I think that you would have the opportunity for equalizing knowledge. So, you know, again, well, let me say this. What does that mean, the opportunity for equalizing knowledge? What I mean is, again, I mentioned this before. If the proprietor or the premises owner has constructive knowledge, even if the plaintiff or the invitee does not see the sign and they should have seen the sign, as we argue in this case, as we deal with that issue, then I think that you avoid summary judgment when you have, all you have to have is constructive knowledge on the part of the plaintiff if the defendant had no better than constructive knowledge. The sign is up. So the store owner has actual knowledge. I'm trying to get at, with the sign that's posted, if the plaintiff always denies I didn't see the sign, whether I was walking normally, whether I was walking backwards, whether I was walking at the ceiling, if the plaintiff swears I didn't see it, even if the plaintiff should have, are we always going to trial? Assuming actual knowledge on the part of the establishment with the sign. Okay. And I don't want to get hung up too much on whether the person saw the sign or not, because I think it's more of a view of the totality of the circumstances, and that's what we have from the Robinson case. Basically, if there's a sign and it's a small, for example, the Perkins case, which I don't think is applicable to this case because it's not a premises case, but it was analyzed that way. It's a federal district court case. It was cited by the defendant. I think we responded to that in our reply brief. In that case, it was literally a two-by-two area that was mopped. So I think in a two-by-two area you can have a sign, and you can say that one sign is adequate whether someone sees it or not. But if you have a large area, like we have testimony from the manager saying they shouldn't have been mopping the entire dining room, they shouldn't have been doing it when it was busy. They were doing that, and they had one sign on this side and one sign on this side. And I think the totality of the circumstances, you need to have proper notice, and it would have been done by multiple signs cordoning off the area. So you're saying you're acknowledging that there are circumstances where even if the plaintiff says, I didn't see the time that a case could be resolved on summary judgment. Yes, absolutely. Just not this case. Sounds bad, but yes. That's all I have. A for candor. Okay, very well. So we'll hear from you again on rebuttal, and we carried you over, so you'll have your full rebuttal time. All right. So I have Grote. Is it Grote or Grote? Grote. Grote, there you go. May it please the Court, Paul Grote on behalf of defendant. This is a slip and fall case under Georgia law. The trial court granted summary judgment finding that the plaintiff did not exercise ordinary care for her own safety, and that was based on the unobstructed wet floor sign that we see on the video. I'm sure the Court's viewed the video. Plaintiff walks in a straight line. She walks by this wet floor sign. It looks to me, when I look at it, she could have reached out and touched it with her hand. She takes about two to three steps, and then she slips on a puddle of water. Now, under Georgia law, in a premises liability case, the plaintiff has to prove the linchpin is typically the superior knowledge of the owner or occupier of the premises. But the second prong, and that's really what the trial court ruled on, is that the plaintiff lacked knowledge of the claim hazard despite exercise of ordinary care for her own safety. So when a defendant introduces evidence that a plaintiff failed to exercise ordinary care under the case of Robinson v. Kroger and the AMC v. Brown case, those are cited by the briefs, plaintiff has a burden of production to show why she introduced something that shows why she exercised ordinary care. And that's important because I don't think that that has been met on this case. Now, we've got a video. There's no obstructions. The case, the Allen v. ABM Aviation case, was mentioned in the briefs. And footnote, I believe it's footnote three of the opinion, talks about cases where there are wet floor signs and what are the cases where summary judgment was granted or upheld and what are the cases that's inappropriate. And the opinion points out that in cases where summary judgment is denied, there's some sort of dispute as to the presence of the wet floor sign. And obviously we've got video here. This is not a case where there's a dispute about the presence. There are a few other random cases where there's a specific factual issue with the location of the sign such that it may not have been visible. The case of Sutton v. Winn-Dixie is cited in the briefs. In that case, it was a slip and fall. It's a rainy day case, so it's actually slightly different under Georgia law. But there was a caution wet floor sign present. But if you read the opinion, what happened is the plaintiff was approaching a building. The door got stuck on a rubber mat. She had to push her way in through the building. And then the testimony was that the sign was off to the side of the door. So it wasn't clear that the plaintiff necessarily could have seen the caution wet floor sign. Just so I'm clear, your position presumably is not that a visible sign is sort of a get-out-of-jail-free card, right? I mean like if the sign is 50 feet across the room from the wet spot, no matter how visible that sign is. It's not a get-out-of-jail-free card, Your Honor. And then it gets into fact circumstances. There's a couple of decisions. The Allen v. Aviation is an example where the plaintiff saw a caution wet floor sign, saw someone mopping as she was riding an escalator down the stairs. But she said it was over in this other area off to the left. I went down the escalator, turned to the right, and slipped and fell. The plaintiff argued in that case she didn't have knowledge of that particular area before. So that does get into some questions. But, you know, here we're not talking about a large amount of space. I mean the plaintiff walked right by it three steps, and then the fall occurred. So no, the slip and fall. The caution wet floor sign is not an automatic get-out-of-jail-free card. And like I said, there could be circumstances, and they're discussed in some of the cases, where maybe the plaintiff didn't see the sign. I believe there's a district court opinion, Ahuja, if I said that correctly, the Cumberland Mall. That's a case where there's a caution wet floor sign tucked away in a corner. Again, those are situations where there was a caution wet floor sign, and the court's like, well, we can't determine on this, on the summary judgment record, whether a plaintiff exercised ordinary care for their own safety. Here we've got really clear video showing an unobstructed view, and it's so close that that's what distinguishes it from those cases. I wanted to address this actual knowledge via constructive knowledge. The case cited by plaintiffs is Dickerson v. Guest Services, which is a Georgia Supreme Court decision. The Dickerson decision, the court doesn't have to go into actual knowledge via constructive knowledge to affirm the trial court's decision in this case. If you read Dickerson, there's two inquiries. The first part is, did the property owner have superior knowledge of the hazard? And that was the whole actual versus constructive knowledge, and I'll talk about that in a little bit. But then if you read the next paragraph, the Georgia Supreme Court said, we can't rule on this record also whether plaintiffs exercised ordinary care for their own safety. So those are two different inquiries, and that's that latter inquiry that the trial court ruled on here, the exercise of ordinary care. It doesn't matter if— Yeah, let me ask you to address a question I have about the exercise of ordinary care. I mean, she didn't skip across the floor. She didn't dance across the floor. She didn't spin across the floor. She wasn't looking up at the sky. What is it here that would suggest that she didn't exercise ordinary care except for the fact that she fell? Sure, Your Honor. And when the deposition occurred, there were questions about this. We asked if anything distracted her. We asked if she saw a caution wet floor sign at any point in the store, and the deposition testimony was that she never saw a caution wet floor sign. She was asked specifically about the hazard. What type of hazard was it? And she described it as a puddle of water. It was dirty. You could see it from a standing position. It was at least four feet by four feet. She was asked if anything distracted her, and that's relevant because if you read the Robinson v. Kroger case, there's a distraction doctrine that applies if the defendant did something that may draw the plaintiff's attention away. But, you know, under Georgia law, and it's alterman foods v. Ligon, a plaintiff is obligated to exercise their senses and to try and avoid things that could cause them harm. And that's the idea that you've got to pay some attention. I mean, are you just saying, like, this is like a reverse race of soloquitur situation where, like, she fell. There was no real good reason for her to fall. Therefore, it must be because she wasn't exercising ordinary care. Is that kind of what you're saying? Kind of, Your Honor. I mean, under Georgia law, I think that we've got an unobstructed wet floor sign. So that's some evidence that she wasn't exercising ordinary care. She testified she wasn't looking at the floor. So we've got a situation where we've got a marked wet floor, and she didn't see the sign. She never looked at the floor. I asked her in her deposition, do you have kids? Yes. Did you tell your kids that you should pay attention and look where you're going? Yes. So I've met my burden to show, to introduce something. It comes from plaintiff's burden to introduce something showing that she did, in fact, exercise ordinary care. And I don't know what that is still as we sit here today. I don't know. She didn't see it. The only testimony we got in the deposition was that maybe there was some sort of booth that somehow obstructed her view of the floor. That's just inaccurate when you look at the video. I mean, it's a straight line. There's no obstructions. And to answer another question, I think Judge Branch was asking plaintiff about this. The case of Weikert v. Home Depot may answer some of these questions. This is a slip and fall case. And in that case, the store had actual knowledge of water on the floor. The plaintiff goes and asks a store employee for assistance in locating something. The plaintiff then follows the store employee and then slips and falls on the water by the caution wet floor sign. Now, the plaintiff's argument, plaintiff testified that they never saw the caution wet floor sign. And then they tried to argue that they were distracted by following this employee. And that's the reason they couldn't see the sign. And the Georgia Court of Appeals affirmed summary judgment. They said, you know, you've got a marked hazard. It's a caution wet floor sign. Nobody forced you to, I believe the plaintiff described it in that case as follow the employee so closely they couldn't see the wet floor sign around the employee. That's the summary judgment case under Georgia law. And so hopefully that answers some of the questions. It doesn't matter whether or not the plaintiff necessarily saw it. Wet floor signs are open and obvious under Georgia law. People are charged with their knowledge. Unless there's some sort of reasonable explanation as to why they couldn't have been seen, tucked away in a corner. I believe one of the cases, I'm blanking on the name, it's cited in the brief. There was a wet floor sign, but it was obstructed by boxes. Those are situations where a plaintiff is excused from these caution wet floor signs. But we don't have that case here. And hopefully that addresses some of this issue. I did want to talk briefly about actual knowledge. The deposition testimony cited by plaintiff in that, that deponent was specifically asked if she saw water on the floor before or after the fall and she testified no. That deponent also testified that somebody else had mopped the floor and she guessed that the floor might be wet because it had been mopped. That's not actual knowledge, that's speculation. And that's not sufficient to create a genuine issue of material fact at the summary judgment stage. We also had the unusual issue is of her testimony was somewhat inaccurate and it's discussed in my brief in more detail. But that particular deponent testified that somebody else had mopped the floor and the parties agreed that that person is the person shown on the video mopping the floor. So that is addressed in more detail in the briefs. But this idea that Steak and Shake had actual knowledge, I also dispute. But the court doesn't have to get into that factual issue because it can simply affirm on this failure to exercise ordinary care for their own safety. Okay, Judge Branch, do you have questions? I do not. Thank you. Okay, very well. Thank you so much. Thank you. All right, Mr. Little, let's hear from you in rebuttal. We contend that the trial court, the district court invaded the province of the jury in that sense of way, to the extent that it weighed the testimony of the employee and said, well, I'm not going to consider that. That's not discussed in the order. But when counsel talks about the credibility of the server who provided this testimony that the floor was shiny and to that extent, that is something that is the province of the jury to weigh that testimony. And so on summary judgment, that would be inferred in the favor of the non-movement. It sounds to me that the thrust of his argument is really with respect to the care that your client either did or didn't take. Okay. So I think if I were you, I would focus on that issue. I will. There is a 2020, recent 2020 case, Dupree versus Houston County Board of Education, which I don't think either of us cited to. 849 Southeast 2nd, 778. And that's a case that refers to the relative knowledge of the parties. So I just, I would, before I move on, I would just say that I think that's an important piece of information because the restaurant admitted that they had this long-time malfunctioning machine, a drink machine, that none of the guests of this restaurant knew that, as far as we know. Only the restaurant knew that. They had multiple requests in for repairs. And so that's something that is superior knowledge, again, on the part of the restaurant. As far as her, Ms. Helton's exercise of care, she's, I believe, 5'1". She walks around these high booths in the middle of the restaurant. She says that she's probably looking for the, to the cash register to pay the dinner check, the lunch check. So we have to say that she was not entitled to look there. Look, if she had walked through a cordoned-off area and fallen, like their policies and procedures say, we wouldn't be here today. We wouldn't be appealing this case. The fact is that there was a single sign in that particular area that didn't give any direction as to where to go, where is a safe place to walk. And that's why you have 180 traversals in the 70 minutes prior to the incident. Can you refresh? It's been a little while since I watched the video. Is there, was there some requirement that she walk through this area, or was there kind of, what was the structure of this facility as far as the wet area and whether you could walk around there or what? So there was, there was a front walkway between the middle booths and the front seating. And then there's this walkway between the soda fountain and the middle seating. And so she could have gone either way. And again, so, so it wasn't like this was the only area of ingress and egress. She, you know, again, she took the same path or similar path to dozens of other people, and she was the one that fell. Is there any, I mean, and I guess, I mean, so the, so opposing counsel says that there's no evidence that she sort of did exercise ordinary care, that there is some evidence that she, you know, she said she didn't see the sign. She said she really wasn't looking at the floor. What, what do we have on that from your perspective? Well, that's where Robinson v. Kroger comes in, and you have that statement of the law that we're lightening the load on plaintiffs because we've been too harsh as to what the principles are in the past. And in the Alterman case, which is heavily cited on that side, the Robinson v. Kroger case says we're not requiring people to look at the floor. You can still have, you can still be exercising care for your own safety. You're entitled to, to assume that the premises are safe when you go into a business. And, and you're entitled to walk through a business without looking at the floor constantly to look for hazards. So, again, the sign, to me, is constructive knowledge that she, you know, we can see that she probably should have seen it, the sign, but she did not see the sign. She did not see the hazard, and the other side says that they did see this, this water. Okay, very well. Judge Branch, do you have any final questions? I do not. Thank you. Okay, very well. That case is submitted. Thank you both.